UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

MARK STEYN ENTERPRISES (US) Inc., )
MARK STEYN, )
     Plaintiffs )     Civ. Action No.
               )
     v. )
               )
CRTV LLC, )
     Defendant )

**VERIFIED MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER**

NOW COME plaintiffs, by and through their attorneys, Catherine E. Clark and Clark, Werner & Flynn, P.C., pursuant to Rule 65(b)(1)(A)and (B) of the Federal Rules of Civil Procedure, and hereby move for an ex parte Temporary Restraining Order against defendant CRTV LLC as follows:

1.     Plaintiff Mark Steyn Enterprises (US) Inc., hereinafter MSE, is a New Hampshire corporation doing business in Williston, Vermont;  Mark Steyn is a world renowned author, TV and radio personality and musician, whose home is in New Hampshire.

2.     CRTV LLC is a Foreign Limited Liability Company, with principal place of business in Las Vegas, NV, doing business (for purposes of this action) in Williston, Vermont.

3.     On May 9, 2016 MSE, Mark Steyn and CRTV entered into a "Binding Term Sheet," hereinafter The Agreement, which provided for REDACTED The Binding Term Sheet is attached hereto as Exhibit 1 and incorporated by reference herein.

4.     CRTV is obligated under The Agreement to REDACTED The total gross compensation payable to MSE over the terms . shall be REDACTED

1

REDACTED

5.      Mark Steyn is obligated to host        shows per year.

6.      Mark Steyn has been performing per the contract.

7.      On February 8, 2017, an agent of CRTV entered the leased studio premises after Mark Steyn had left for the day, and told all staff that the show was cancelled immediately and to "stand down" and go home. In addition, on Monday, February 20, 2017 attorney Corbin K. Barthold, representing CRTV, sent Melissa Howes, CEO of MSE Notice of Termination of Binding Term Sheet and Demand for Indemnity, attached hereto as Exhibit 3, and the attached email attached as Exhibit 4, stating that she and "Mr. Steyn are no longer entitled to enter the studio without authorization.  However, you may have until February 28 to meet with your staff and remove any personal items from the studio," effectively evicting them from the premises.

8.      Thereafter MSE and Mark Steyn continued to perform under the contract, paying the employees themselves and delivering episodes of the show as scheduled.

9.      The Notice of Termination and Demand for Arbitration, claimed falsely that MSE had materially breached the agreement by not producing the requisite number of shows. Arbitration is provided for in the Binding Term Sheet as the method of resolving disputes under The Agreement, while each party retains their rights to equitable relief from a court having jurisdiction over the parties.  See paragraph 19.

10.     CRTV had February 20, 2017 filed a Demand for Arbitration with the AAA, and the case is pending on the question of monetary damages.

11.     In the meantime, Mark Steyn has completed shows scheduled to air, as well as shows in production for which he has made commitments, relying on the contract with CRTV.

12.     MSE and Mark Steyn seek a temporary restraining order ex parte and temporary

2

injunctive relief as well as specific performance against CRTV based on irreparable harm, pending the outcome of the Arbitration proceedings, as follows:

a.    Mark Steyn has an international reputation as a radio and TV personality, musician, and international bestselling author.  Abruptly cancelling the show after promoting it will damage his reputation worldwide, also damaging his good will among the personalities and talents he has recruited to appear on the show. In addition, CRTV spent months using Steyn's name and image (including on billboards in Times Square) selling pre-launch subscriptions to a year's worth of Steyn shows. In improperly canceling the show a month after launch, CRTV will be defrauding Steyn's fans, who will also suffer harm from the show's cancelation before Arbitration, and implicate Steyn in its own misrepresentation and fraud, thereby further damaging him.

b.    The staff and personnel for the show have been brought to Vermont from around the country, many whose families relocated here based on the          contract for the show. Abruptly letting them go will cause them irreparable harm. Local staff recruited from Vermont PBS and elsewhere also signed with the Steyn show based on the          contract.

c.    The employees have been provided with health insurance in connection with their employment, which will end if the show is shut down, causing potential irreparable harm to them and their families.  In addition, there may be harm to the State of Vermont which may have to provide coverage and/or health services to those individuals whose coverage terminates with their employment.

13.    Plaintiffs have a substantial likelihood of success on the merits in binding arbitration, as defendant arbitrarily and capriciously told the show's employees to "stand down," and that the show was cancelled, without any cause; plaintiffs have been performing pursuant to

their contracts.

14.     Bond should not be necessary, as Arbitration will resolve amounts due between the parties.

15.     There is no hardship to defendant, as it will be receiving the benefit of The Agreement while Arbitration is pending.  Also, Arbitration will resolve the claims of the enjoined party, which are compensable in damages.  However, the harm to plaintiffs and his employees is irreparable and potentially irreversible.

16.     There may be an adverse effect on the public interest in the event that 20 employees are suddenly without health insurance coverage.

## MEMORANDUM

Rule 65(b)(1) provides that a temporary restraining order may be issued without notice to the adverse party or its attorney if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition and (B) the movant's attorney certified in writing any efforts made to give notice and the reasons why it should not be required.  The purpose of the request for the ex parte temporary restraining order is to preserve the status quo until there is an opportunity for a fuller hearing on a motion for preliminary injunction.

Here, defendant told plaintiffs and its employees and staff not to enter the building as of Monday, February 20, 2017 and that they have until February 28, 2017 to remove their personal belongings.  Unless defendant is enjoined from shutting down the show and evicting the employees and staff and preventing them from performing their work under The Agreement, then the irreparable harms outlined above will occur.  Specifically the damage to plaintiffs' reputation, the damage to the 20 employees and their families and possibly to the State of

4

Vermont when those employees are suddenly without jobs and health insurance are beyond compensation by money and are irreparable.

WHEREFORE, plaintiffs pray for an ex parte temporary restraining order as follows:

Defendant shall be enjoined from cancelling the show and locking out the personnel; it shall be ordered to specifically perform its duties under the Binding Term Sheet, in particular,

## REDACTED

and for such other temporary injunctive relief as is just, pending the parties' binding Arbitration.

ATTORNEY CERTIFICATE REGARDING NOTICE TO DEFENDANT'S COUNSEL OF COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PURSUANT TO RULE 65(b)(2)

Pursuant to Rule 65(b)(2) of the Federal Rules of Civil Procedure, plaintiff's counsel Catherine E. Clark hereby certifies that she made the following efforts to give notice to defendant CRTV to fulfill the requirements of Rule 65(b)(2):

On February 21, 2017 counsel telephoned Corbin K. Barthold, attorney for CRTV LLC and told him of this Complaint. In addition, counsel emailed the Complaint and attachments to cbarthold@bgrfirm.com.

Mr. Barthold is the attorney who filed the Demand for Arbitration on behalf of CRTV on February 20, 2017. A copy of the Complaint was also sent to attorney Eric George of the same firm, at his email address egeorge@bgrfirm.com. Mr. George is the attorney who gave MSE notice of termination.

Dated at Burlington, Vermont, this 22nd day of February, 2017

MARK STEYN ENTERPRISES (US) Inc.

MARK STEYN

5

By:    _Catherine E. Clark_

Catherine E. Clark, Esq.
Clark, Werner & Flynn, P.C.
192 College Street
Burlington, VT 05401
802 865-0088
catherineclark@cwf-pc.com
Attorneys for Plaintiffs

_Mark Steyn_

Mark Steyn, Chairman
Mark Steyn Enterprises, Inc.
Mark Steyn personally


STATE OF VERMONT
CHITTENDEN COUNTY, SS.
    At Burlington, Vermont, this _22nd_ day of February, 2017, Mark Steyn personally appeared and swore to the truth of the matters asserted in this Complaint, before me

_Catherine E. Clark_
Notary Public